UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DOROCON, INC.,

    Plaintiff,

     v.

REGINA BURKE, *et al.*,

    Defendants.

Civil Action No. 02-2556 (CKK)

## MEMORANDUM OPINION
(December 16, 2005)

Currently before the Court is Plaintiff's "Motion to Reconsider the Court's 11/1/2005 Order Dismissing Dorocon's Claims that Burke Breached the Contract," Defendants' Opposition, and Plaintiff's subsequent Reply. Upon a searching examination of these filings, the entire record herein, and the relevant case law, the Court shall deny Plaintiff's Motion for Reconsideration.

## I: BACKGROUND

On September 27, 2004, this Court issued a lengthy Memorandum Opinion and Order resolving Plaintiff's Motion for Summary Judgment. In its Memorandum Opinion, the Court made a generalized determination that Defendants had not fully performed under the 1993 Consulting Agreement signed between the parties, and, in fact, had underpaid Plaintiff by $770,250. *See Dorocon v. Burke*, Civ. No. 02-2556(CKK), at 52, 57-59 (D.D.C. Sept. 27, 2004). Moreover, the Court found that – pursuant to the terms of the contract – Plaintiff was not explicitly required under the agreement to provide any post-contract consulting services. *Id.* at 55-56. However, the Court, looking at Defendants' various counterclaims, also concluded that Plaintiff owed Defendants a duty of good faith and fair dealing not to unreasonably and arbitrarily exercise its judgment in

determining what consulting services were reasonably required under the contract. *Id.* at 56-57.

Finding a genuine issue of material fact as to whether Plaintiff breached this duty of good faith and

fair dealing implied in the contract, the Court noted that "[i]t will therefore be for the jury to

determine whether Plaintiff has breached the implied duty of good faith and fair dealing by 'evading

the spirit of the contract' and exercising its discretion in an arbitrary or unreasonable manner." *Id.*

at 57 (citations omitted).  Accordingly, the Court met with the parties on January 18, 2005, set forth

a schedule for pre-trial filings, and set a trial date of November 8, 2005 to resolve the remaining

factual issue in the above-captioned action.

Pursuant to the Court's Scheduling and Procedures Order, the parties – after a lengthy

period of unsuccessful settlement negotiations – began filing pre-trial motions in this case in

September 2005.  The Court issued a Memorandum Opinion on November 1, 2005, which

addressed many of the parties' various pre-trial motions.  *See Dorocon v. Burke*, Civ. No. 02-

2556(CKK) (D.D.C. Nov. 1, 2005) (memorandum opinion addressing (1) Plaintiff's Motion to

Shift the Order of Proof at Trial; (2) Plaintiff's *In Limine* Motion; (3) Defendants' Motion *in Limine*

to Exclude Evidence Relating to Settlement Discussions Between the Parties; and (4) Defendants'

Motion *in Limine* to Exclude Evidence Relating to Undisclosed Consulting Services Allegedly

Provided by Dorocon).  While the Court had hoped to resolve all other issues pending before the

trial date in the Pre-Trial Conferences held on November 1-2, 2005, it soon became clear that the

scope of the parties' remaining disagreements coupled with the need for a more extended period with

which to digest the Court's November 1, 2005 Memorandum Opinion necessitated a postponement

of the trial in the action.  As such, after consultation with the parties, the Court continued the trial in

this case to the week of January 23, 2006.

Seizing the opportunity presented by the extension period, Plaintiff, on November 11, 2005, filed a Motion for Partial Reconsideration of the Court's November 1, 2005 Memorandum Opinion. *See* Pl.'s Mot. for Recons.  Plaintiff's motion addresses only the portion of the Court's Opinion that dealt with the "piercing the corporate veil" issue discussed in Defendants' Response to Plaintiff's Motion to Shift the Order of Proof at Trial and Plaintiff's subsequent Reply.  *See Dorocon v. Burke*, Civ. No. 02-2556(CKK), at 6-9 (D.D.C. Nov. 1, 2005).  In the pertinent section, the Court held, *inter alia*, (1) contrary to Plaintiff's assumptions, the issue of whether Defendants Queen's Fare, Inc. ("QFI") and Regina Burke are jointly and severally liable for any liquidated damages due Plaintiff under the 1993 Consulting Agreement had never been litigated or specifically decided by this Court; (2) upon a plain reading of the language of the 1993 Consulting Agreement, it is clear that the Agreement requires only that Queen's Fare, not Ms. Burke, make payments to Dorocon; (3) the contract does not bind Defendants jointly and severally to Dorocon; and (4) while Ms. Burke did have one specific obligation under the Agreement, it has never been argued or established that she violated that provision.  *Id*. at 6-7.  Accordingly, the Court found that the only route through which Plaintiff could hold Ms. Burke liable for the damages due under the Agreement if it prevailed at trial was by establishing that she had "breached the corporate veil" with QFI and could be held personally liable as an "alter ego" for the corporation's obligations.  *Id*. at 7-9.  The Court further pointed out that Defendants were not required to raise this issue at an earlier point, given the fact that an "alter ego"/"piercing the corporate veil" theory is not an affirmative defense; rather, the burden of proof rests with the party seeking to negate the existence of the separate entity.  *Id*. at 7-8 (citing cases).

Plaintiff, in its current Motion for Reconsideration, makes two central arguments, in the alternative.  First, Plaintiff contends that joint and several liability under the Consulting Agreement

was either (1) conceded by Plaintiff in its Answer to the Complaint, Response to Plaintiff's

Statement of Material Facts Not in Dispute, and/or its Opposition to Plaintiff's Motion for Summary

Judgment <u>or</u> (2) determined as a matter of law by the Court in its September 27, 2004

Memorandum Opinion, and that the Court's November 1, 2005 ruling to the contrary was therefore

"clearly erroneous and surprising."  Pl.'s Mot. for Recons. at 1, 2-8.  Second, Plaintiff argues that

even if the Court does not agree that Plaintiff conceded or the Court decided the issue of joint and

several liability between Defendants under the Consulting Agreement, Plaintiff's "claims" against

Defendant Burke for breach of contract should still have survived and been preserved for trial before

the jury in this case.  *Id.* at 1, 6, 8-9.

## II: LEGAL STANDARDS

While Plaintiff has not explicitly identified which provision of the Federal Rules of Civil

Procedure it relies upon as the foundation for its Motion for Reconsideration, it does appear to favor

Federal Rule of Civil Procedure 60(b)(1) as the governing standard.  *See* Pl.'s Mot. for Recons. at 1

(arguing that "[r]econsideration is needed to correct the Court's clearly erroneous and surprising

ruling to prevent a waste of resources and a manifest injustice" and citing Fed. R. Civ. P. 60(b)(1)).

The Court notes that the standards governing a motion for reconsideration under Federal Rule of

Civil Procedure 60(b) are somewhat more restrictive than those governing Federal Rule of Civil

Procedure 59(e).  *See United States v. Pollard*, 290 F. Supp. 2d 153, 156-58 (D.D.C. 2003).  In

relevant part, Federal Rule of Civil Procedure 60(b) provides:

> On motion and upon such terms as are just, the court may relieve a party or a party's
> legal representative from a final judgment, order, or proceeding for the following
> reasons:  (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly
> discovered evidence by which due diligence could not have been discovered in time
> to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated
> intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4)
> the judgment is void; (5) the judgment has been satisfied, released, or discharged,

reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

Fed. R. Civ. P. 60(b).

However, despite Plaintiff's apparent contention, the Court believes that the slightly more liberal standard under Federal Rule of Civil Procedure 59(e) is actually the correct reconsideration standard in this context. The general rule is that a motion for reconsideration is treated as a "[Fed. R. Civ. P.] 59(e) motion if filed within 10 days of entry of the challenged order and as a Rule 60(b) motion if filed thereafter." *Pollard*, 290 F. Supp. 2d at 156 (quoting *United States v. Clark*, 984 F.2d 31, 32 (2d Cir. 1993)); *see also Derrington-Bey v. Dist. of Columbia Dep't of Corr.*, 39 F.3d 1224, 1225-27 (D.C. Cir. 1994) (same); *cf.* Fed. R. Civ. P. 59(e) ("Any motion to alter or amend a judgment shall be filed no later than 10 days after entry of the judgment."). In this instance, only 10 calendar days passed between the entry of the Court's November 1, 2005 Memorandum Opinion and Plaintiff's Motion for Reconsideration filed on November 11, 2005. Moreover, Rule 6(a) of the Federal Rules of Civil Procedure dictates: "When the period of time prescribed or allowed is less than 11 days, intermediate Saturdays, Sundays, and legal holidays shall be excluded in the computation." Fed. R. Civ. P. 6(a); *see also Piper v. U.S. Dep't of Justice*, 312 F. Supp. 2d 17, 21 n.1 (D.D.C. 2004). Because Plaintiff filed its Motion to Reconsider on Friday, November 11, 2005, less than 10 days -- as computed by Federal Rule of Civil Procedure 6(a) and taking into account the passage of a weekend – had elapsed between the filing and the Court's Memorandum Opinion of Tuesday, November 1, 2005. As such, the relevant standard under which to adjudicate Plaintiff's Motion for Reconsideration is Federal Rule of Civil Procedure 59(e).

"The district court has considerable discretion in ruling on a Rule 59(e) motion." *Piper*, 312 F. Supp. 2d at 20 (citing *Rann v. Chao*, 209 F. Supp. 2d 75, 78 (D.D.C. 2002)). Importantly,

"[a] motion pursuant to Fed. R. Civ. P. 59(e) to alter or amend judgment after its entry is not routinely granted." *Harvey v. Dist. of Columbia*, 949 F. Supp. 878, 879 (D.D.C. 1996).  "Motions under Fed. R. Civ. P. 59(e) are disfavored and relief from judgment is granted only when the moving party establishes extraordinary circumstances." *Niedermeier v. Office of Baucus*, 153 F. Supp. 2d 23, 28 (D.D.C. 2001).

"Rule 59(e) motions 'need not be granted unless the district court finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct clear error or manifest injustice.'" *Anyanwutaku v. Moore*, 151 F.3d 1053, 1057 (D.C. Cir. 1998) (quoting *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (per curium)).  Rule 59(e) motions are not granted if the court suspects the losing party is using the motion as an instrumentality for arguing the same theory or asserting new arguments that could have been raised prior to final judgment.  *Taylor v. Dep't of Justice*, 268 F. Supp. 2d 34, 35 (D.D.C. 2003) (citing *Kattan v. Dist. of Columbia*, 995 F.2d 274, 276 (D.C. Cir. 1993) (citations omitted)).  Indeed, the law is clear that a "Rule 59(e) motion is not a second opportunity to present argument upon which the Court has already ruled, nor is it a means to bring before the Court theories or arguments that could have been advanced earlier." *W.C. & A.N. Miller Co. v. United States*, 173 F.R.D. 1, 3 (D.D.C. 1997), *aff'd sub nom. Hicks v. United States*, No. 99-5010, 1999 WL 414253 (D.C. Cir. May 17, 1999); *see also New York v. United States*, 880 F. Supp. 37, 38 (D.D.C. 1995) ("Rule 59(e) motion to reconsider is not simply an opportunity to reargue facts and theories upon which a court has already ruled.").  It is well-established that Rule 59(e) motions "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment."  11 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2810.1 at 127-28 (2d ed. 1995).

### III: DISCUSSION

In analyzing Plaintiff's Motion for Partial Reconsideration of the Court's November 1, 2005 Memorandum Opinion, the Court shall make a tripartite inquiry. First, the Court shall re-examine the parties' previous filings in order to determine if Defendants somehow waived or conceded the joint and several liability of Defendant Burke under the 1993 Consulting Agreement. Second, the Court shall review its previous rulings in order to determine whether the issue was actually litigated by the parties and actually decided by the Court such that the "law-of-the-case doctrine" should apply. Third, and finally, the Court shall re-evaluate the relevant legal and factual determinations that it made on this issue in its November 1, 2005 Memorandum Opinion. Upon such a re-examination, the Court concludes that the relevant ruling in its November 1, 2005 Memorandum Opinion was neither "clearly erroneous" nor a "manifest injustice." As such, Plaintiff's Motion for Reconsideration must be denied.

A.  *Did Defendants Waive or Judicially Admit Joint and Several Liability Under the Contract?*

Plaintiff's argument that Defendants somehow waived or conceded the issue of Ms. Burke's potential joint and several liability under the 1993 Consulting Agreement centers around four areas of pleading and motions practice between the parties: (1) Plaintiff's Complaint and Defendants' Answer; (2) Plaintiff's Statement of Material Facts Not in Dispute and Defendants' Response to Dorocon's Fact Assertions and Statement of Disputed and Undisputed Facts; (3) Plaintiff's Motion for Summary Judgment and Defendants' Opposition; and (4) the parties' Joint Status Report. While the Court certainly assents to Plaintiff's request that it re-review this material, Truman Capote's maxim ultimately holds true: "There are more tears shed over answered prayers than over unanswered prayers." TRUMAN CAPOTE, ANSWERED PRAYERS xii (Vintage International ed. 1994)

(1987) (quoting St. Teresa of Avila).  Plaintiff's waiver argument is ultimately without foundation, as Defendants have neither admitted joint and several liability, nor waived any opposition to such an argument.  Rather, the record is replete with instances where Defendants specifically maintained the position that Defendant Burke's liability is a separate and distinct issue from Defendant QFI's liability under the 1993 Consulting Agreement.

A judicial admission only occurs when a statement made in the course of a lawsuit concedes a fact, thereby relieving the party with the burden of proof from the obligation to submit evidence of the fact at trial.  *See Johnson v. Dist. of Columbia Rental Housing Comm'n*, 642 A.2d 135, 138 (D.C. 1994).  "To constitute judicial admission, a statement must be 'by *intention* an act of waiver relating to the opponent's proof of the fact and not merely a statement of assertion or concession made for some independent purpose.'" *Piedmont Resolution, LLC v. Johnston, Rivlin & Foley*, 999 F. Supp. 34 (D.D.C. 1998) (quoting *McNamara v. Miller*, 269 F.2d 511, 515 (D.C. Cir. 1959) (emphasis added)).  As the D.C. Circuit has emphasized, "[j]udicial admissions . . . must be deliberate, express and unequivocal . . . and are limited to questions of fact." *United States v. Ins. Co. of North Am.*, 83 F.3d 1507, 1510 n.6 (D.C. Cir. 1996) (citations omitted); *see also Johnson*, 642 A.2d at 138 (citing IX WIGMORE ON EVIDENCE § 2588 (Chadbourn ed. 1981) (admission must be an "*express waiver* made in court conceding for the purposes of trial the truth of some alleged fact") (emphasis added)).  Based upon this standard, it is clear that none of Defendants' filings rise to the level of a judicial admission.

        1.    <u>Plaintiff's Complaint and Defendants' Answer</u>

As a point of order, Plaintiff begins its argument by citing to its Complaint, contending that it has never "allege[d] that Burke is personally liable for QFI's contractual obligation as the 'alter ego' of QFI under a 'piercing of the corporate veil' theory; rather, Dorocon alleges that Burke is

personally liable under the Contract based upon her own breach."  Pl.'s Mot. for Recons. at 2; Pl.'s

Reply to Defs.' Opp'n to Pl.'s Mot. for Recons. at 1.  Based upon this contention, Plaintiff claims

that it is quite awkward that its only avenue of recovery vis-á-vis Defendant Burke – based on the

Court's November 1, 2005 Memorandum Opinion – is through a "piercing of the corporate veil"

theory.  *Id.*

   However, a review of Plaintiff's Complaint illustrates that such an argument is clearly

implicit within its four corners.  For instance, in the Complaint, Plaintiff acknowledged that QFI is a

"Massachusetts corporation" and that Ms. "Burke has been the president and sole shareholder of

QF."  Compl. ¶ 4.  Further, the Complaint alleges that Ms. "Burke . . . has exercised complete and

total control over Queen's Fare," *id.*, and that her liability arose from her control over QFI:  Ms.

"Burke caused QF to continue in active business operations for the remainder of 2001," *id.* ¶ 15;

Ms. "Burke caused QF to sell substantially all of its assets," *id.* ¶ 16; Ms. "Burke, on information

and belief, caused QF . . . to make very substantial payments directly to her," *id.* ¶ 18.  Allegations

that Ms. Burke "controlled" QFI, "caused" the company to breach the Consulting Agreement or

"caused" QFI to divert money to her personally present a classic veil-piercing scenario.  As such,

Plaintiff's claims of "surprise" are ill-founded:  an "alter ego"/"piercing of the corporate veil"

argument lies at the heart of its Complaint.

   Plaintiff then continues its main argument, contending that Ms. "Burke and QFI plead no

distinctions between themselves in the Answer and Counterclaim."  Pl.'s Mot. for Recons. at 2.

Specifically, Plaintiff points to certain paragraphs of its Complaint as evidence that Defendants

conceded a defense to its joint and several liability argument.  *Id.* (citing Compl. ¶ 7 ("Under the

contract, defendants agreed to pay . . . ."); ¶ 13 ("defendants had failed to pay . . . ."); ¶ 14

("defendants also failed to pay . . . ."); and ¶ 15 ("defendants failed to pay plaintiff an additional

sum . . . ."); *see also id.* (citing Compl. ¶¶ 20, 24, 27).

A review of Defendants' Answer and Counterclaim highlights the fact that Plaintiff's argument is unavailing. Rather, there is no express statement in the document indicating that Defendant Burke is in any way personally liable for any damages resulting from the breach. Moreover, in reference to the paragraphs identified by Plaintiff, it is clear that Defendants denied the identified allegations outright, including any implication that Defendant Burke was somehow personally liable under the Consulting Agreement. *See* Answer ¶¶ 7, 13, 14, 20, 24, 27. As such, Defendants "admitted" none of Plaintiff's contentions. Moreover, in response to all of Plaintiff's allegations, Defendants made separate reference to QFI and to Burke, so as to recognize and maintain the integrity of the corporate entity. *See* Answer ¶ 4 ("Defendants admit that Queen's Fare is a Massachusetts corporation . . . and that Regina Burke has been president and sole shareholder . . . [but] Defendants deny the remaining allegations . . . ."); ¶ 10 ("Defendants admit that Queen's Fare made substantial payments to Plaintiff between 1993 and 2002 . . . ."); ¶ 12 ("Defendants admit that in 2000, they provided Plaintiff's auditor with access to the business records of Queen's Fare"); ¶ 15 ("Defendants admit that Queen's Fare continued its business operations through at least August, 2002"); ¶ 16 ("Defendants admit that Queen's Fare sold substantially all of its assets . . . ."); *see also* Answer ¶¶ 1-2 (Queen's Fare is a Massachusetts corporation; Ms. Burke is sole shareholder and president); ¶ 6 (Ms. Burke formed QFI and QFI entered Host sublease); ¶ 11(a) (Host required Burke's personal guarantee and personal presence at shops); ¶ 11(e) (Queen's Fare could not give Ms. Burke a raise). Further, given Defendants' Counterclaim, Defendants specifically requested that the payments made to Dorocon be returned to QFI – the entity that had made such payments. *Id.* at 18, ¶ B ("Enter judgment in favor of Queen's Fare, Inc. . . . in the amount of $665,700").

Accordingly, upon a comparison of Plaintiff's Complaint and Defendants' Answer and Counterclaim, it is plain that Defendants in no way waived, conceded, or admitted Plaintiff's argument that each defendant was jointly and severally liable for all damages under the 1993 Consulting Agreement.  As such, Plaintiff has failed to present evidence that the Court's November 1, 2005 Memorandum Opinion was "clearly erroneous" in this regard.

2.   <u>Plaintiff's Statement of Material Facts Not in Dispute and Defendants' Response to Dorocon's Fact Assertions and Statement of Disputed and Undisputed Facts</u>

Plaintiff next contends that Defendants conceded the joint and several liability argument in their Response to Dorocon's Fact Assertions and Statement of Disputed and Undisputed Facts during the summary judgment phase of the litigation.  Pl.'s Mot. for Recons. at 4.  According to Plaintiff, Ms. "Burke and QFI also did not specifically respond to or address specific points about Burke's personal liability raised by Dorocon in Dorocon's Fact Assertion Nos. 18 and 42." *Id*.  As such, Plaintiff argues, "those facts should have been deemed admitted." *Id*.  However, a comparison of Plaintiff's Statement of Material Facts Not in Dispute – specifically, Plaintiff's Factual Assertions Nos. 18 and 42 – and Defendants' Response illustrates the inaccuracy of Plaintiff's claim.

First, none of Plaintiff's "Fact Assertions" in its Motion for Summary Judgment expressly claimed that Defendant Burke was personally liable for Queen's Fare's contract debts.  Second, Defendants disputed nearly every one of Dorocon's "Fact Assertions," including Nos. 18 and 42 – neither of which addressed Defendant Burke's personal liability.  *See* Defs.' Response to Pl.'s Stmt. ¶¶ 18, 42.  Factual Assertion No. 18, for example, concerned Plaintiff's rights in any new businesses operated by QFI or Ms. Burke at Logan Airport and Dorocon's right to extend the Consulting Agreement by ten (10) years.  *See* Pl.'s Stmt. of Mat. Facts ¶ 18.  Defendants' Response is as follows:

> **Response:**  Disputed.  Burke and Queen's Fare never expanded the business to more
> than two Dunkin Donuts locations.  Further Dorocon never exercised, formally or
> otherwise, any option to extend the Agreement.  In addition, neither Reeves nor
> Dorocon ever objected to the sale of Queen's Fare's assets.  There is nothing in the
> Consulting Agreement requiring that Queen's Fare receive Dorocon's permission to
> sell the business.  Similarly, Dorocon has no right under the Agreement with respect
> to the sale of Queen's Fare, and Ms. Reeves testified that Burke and Queen's Fare
> were entitled to sell the business.

Defs.' Response to Pl.'s Stmt. ¶ 18 (citations omitted).  Accordingly, in Factual Assertion No. 18,

the issue of Defendant Burke's personally liability was never raised by Plaintiff (meaning that it

could not be conceded), Defendants disputed the assertion in its entirety, and Defendants responded

with an argument that highlighted the *several* responsibilities of Ms. Burke and QFI under the

Consulting Agreement.  Similarly, Plaintiff's Factual Assertion No. 42 concerned the payment

obligation found in Paragraph 2 of the Consulting Agreement, but contained no express reference to

Defendant Burke's personal liability.  *See* Pl.'s Stmt. of Mat. Facts ¶ 42.  Defendants responded by

arguing:

> **Response:**  Disputed and objected to as legal argument.  Dorocon did not perform
> its obligations under the Agreement, which excused any obligation for Defendants to
> pay.

Defs.' Response to Pl.'s Stmt. ¶ 42.  Accordingly, Defendants' complete denial of Plaintiff's

assertion that they were under any obligation to pay Plaintiff under the Consulting Agreement

cannot be construed as an admission by Defendant Burke that she is personally liable.  Additionally,

a plain reading of the second sentence of Defendants' Response reveals that the reference to "*any*

obligation" does not concede the existence of such an obligation:  Defendants did not, for example,

say "*the* obligation."  The word "any" does not connote the existence of the noun it modifies; rather,

it implies doubt about the existence, quantity, or extent of the noun.

Third, and finally, both Plaintiff's Factual Assertions <u>and</u> Defendants' Responses to Plaintiff's Factual Assertions frequently highlighted the separateness of the QFI entity and accentuated the fact that the payment obligation fell to QFI alone – despite the fact that the issue was not directly before the Court on Plaintiff's Motion for Summary Judgment.  For example, these pertinent Factual Assertions and Responses read as follows:

> **Fact Assertion No. 2.:**  Defendant's primary payment obligations to Dorocon, on the other hand, are set out in Paras. 2 and 3 of the Contract.  More specifically, *QF* was required to make periodic payments of monies to Dorocon, under Para. 2 based on *QF* gross revenues, and under Para. 3 in a fixed amount.
>
> **Response:**  Disputed.  The written Agreement provides that *Queen's Fare's* payment obligations . . . .
>
> *  *  *  *  *  *  *  *  *  *  *  *
>
> **Fact Assertion No. 4:**  In Para. 2 of the Contract[,] QF and Burke agreed to pay Dorocon based upon the actual gross revenues from their business at Logan Airport regardless of how those "gross revenues" were generated . . . . The monthly payments due to Dorocon under Paras. 2 and 3 of the Contract were intended to be completely independent of any after-the-fact assessment of the specific consulting services, if any which Dorocon provided to QF.
>
> **Response:**  Disputed and objected to as legal argument . . . . Indeed, Dorocon's legal interpretation *is contradicted by the plain language of Paragraph 2*.

Defs.' Response to Pl.'s Stmt. ¶¶ 2, 4 (emphasis added).

Accordingly, given that (1) none of Plaintiff's "Fact Assertions" in its Motion for Summary Judgment expressly claimed that Defendant Burke was personally liable for Queen's Fare's contract debts, (2) many of these "assertions" highlighted the separateness of the QFI entity and accentuated the fact that the payment obligation fell to QFI alone, (3) Defendants disputed all identified assertions which obfuscated the distinction between QFI and Ms. Burke; and (4) Defendants frequently highlighted the legal separation between QFI and Ms. Burke, the Court concludes that Defendants' Response to Dorocon's Fact Assertions and Statement of Disputed and Undisputed

13

Facts in no way waived, conceded, or admitted the joint and several liability of QFI and Ms. Burke

under the 1993 Consulting Agreement.  As such, this filing cannot be a basis upon which to find that

the Court's November 1, 2005 was "clearly erroneous."

        3.      <u>Plaintiff's Motion for Summary Judgment and Defendants' Opposition</u>

Plaintiff makes two arguments in support of its claim that its Motion for Summary

Judgment, when read in conjunction with Defendants' Opposition, laid the foundation for

Defendants' concession of the joint and several liability point.  First, Plaintiff cites to a footnote in its

summary judgment brief and half-a-sentence in its reply brief as proof that Defendants judicially

admitted the existence of joint and several liability.  *See* Pl.'s Mot. for Summ. J. at 15 n.9; Pl.'s

Reply to Defs.' Opp'n at 2.  Second, Plaintiff claims that the manner in which Defendants argued

their Opposition to Plaintiff's Motion for Summary Judgment implied a waiver or admission of

personal liability by Defendant Burke.  Pl.'s Mot. for Recons. at 3-4.  Each argument is without

merit.

First, neither of the self-serving statements focused upon by Plaintiff can amount to a judicial

admission by Defendants.  In Footnote 9 of its Motion for Summary Judgment, Plaintiff – offering

no proof or argument whatsoever on this point – simply proclaims:  "Dorocon continues here to treat

the two defendants (Burke and QF) as one in the same for liability purposes.  If defendants raise an

issue, Dorocon will deal with such issue in its reply memorandum."  Pl.'s Mot. for Summ. J. at 15

n.9.  In their Opposition to Plaintiff's Motion for Summary Judgment, Defendants chose not to

accept Plaintiff's invitation to brief an issue on which Plaintiff had offered (1) no proof, (2) no

citations to the record, (3) no legal argument, and (4) no analysis.  However, Plaintiff, in its Reply,

makes the conclusory assertion that "Defendants do not dispute Dorocon's calculation of those

amounts or that defendants are jointly liable for such amounts (assuming there is liability)."  Pl.'s

14

Reply to Defs.' Opp'n at 2.  Plaintiff's argument in its Motion for Reconsideration that these fragments are sufficient to constitute a judicial admission on the part of Ms. Burke misconstrues its burden under the law.  Importantly, showing Defendant Burke's personally liability under the Consulting Agreement is part of Plaintiff's substantive claim against her as a Defendant:  Plaintiff must argue – and must affirmatively provide evidence supporting such an argument – that some provision within the Consulting Agreement or corporate law creates personal liability.  Simply asserting that it is the case is not sufficient.  Moreover, simply noting that Defendants did not plead something that they were not required to plead does not frame the issue in any way that Defendants were under any obligation to address.  As such, the Court cannot find a judicial admission based upon the citations to Plaintiff's Motion for Summary Judgment and its Reply.

Second, Plaintiff's argument that Defendants' inconsistent use of terminology in its Opposition – i.e., by using phrases such as "a reasonable person could understand the provision to either require that *Defendants* pay only for the services actually performed," Pl.'s Mot. for Recons. at 3 (citing Def.'s Opp'n at 20) (emphasis added), or "*Burke's* evidence shows that in return for the over $665,000 *she* paid Dorocon under the Agreement," *id.* (citing Def.'s Opp'n at 24) (emphasis added) – somehow conceded an argument to Plaintiff that Defendants were jointly and severally liable for any damages is unavailing.  Importantly, even if Defendants somehow *implied* a waiver through their confusing use of terminology (while maintaining a clear distinction between QFI and Ms. Burke in their contemporaneously-filed "Response to Dorocon's Fact Assertions and Statement of Disputed and Undisputed Facts"), a judicial admission cannot occur by *implication* alone.  Rather, as the *McNamara* and *Johnson* courts stressed, an admission must be "express" and "by intention."  *See McNamara*, 269 F.2d at 515; *Johnson*, 642 A.2d at 138 (quotations omitted).  None of the extracts from Defendants' Opposition cited by Plaintiff in its Motion for

Reconsideration demonstrates either Defendant Burke's *intent* to waive a defense to joint and several liability or an *express* waiver of the protections of the corporate entity.

Moreover, some sections of Defendants' Opposition stress the distinctiveness and separateness of QFI and Ms. Burke. For example, in the "Factual Background" section to their Opposition, Defendants state:

> The Agreement thus conditioned any payments from Queen's Fare on Dorocon performing the consulting services set forth in the Agreement . . . . In exchange for the consulting services Dorocon was supposed to provide under the Agreement, Queen's Fare was to make monthly base payments of $6,650 . . . . The Agreement does not contain an integration clause nor does it contain any provision forbidding the sale of Queen's Fare. Similarly the Agreement does not contain any provision requiring Dorocon's consent before Burke could sell Queen's Fare, or a definition of "gross revenue."

Defs.' Opp'n at 9-10. Accordingly, the language used in Defendants' Opposition, while at times inconsistent, is insufficient to constitute a judicial admission and often highlights the distinct and separate nature of QFI and Ms. Burke. Given these factors, and the fact that Defendant was not required to respond to Plaintiff's Footnote 9, the content of Defendant's Opposition to Plaintiff's Motion for Summary Judgment cannot be a basis upon which to find that the Court's November 1, 2005 was "clearly erroneous."

Additionally, the Court takes this opportunity to simply point out that Plaintiff's own Motion for Summary Judgment frequently acknowledged both the integrity of QFI as an entity and that the payment obligation fell to QFI in the entirety under the Consulting Agreement – once again arguing against some sort of waiver or concession on this issue. *See, e.g.*, Pl.'s Mot. for Summ. J. at 5 ("More specifically, *QF's* [sic] is required to make periodic payments, each month, of monies to Dorocon . . . .") (emphasis added); *id.* at 8 ("[I]n response to DiBello's curiosity and questions why *QF* was paying substantial sums to Dorocon . . . .") (emphasis added).

16

4.      The Parties' Joint Status Report

Finally, Plaintiff asserts that Defendants conceded joint and several liability under the

Consulting Agreement based on their Joint Status Report filed on January 14, 2005.  Pl.'s Mot. for

Recons. at 5.  Plaintiff contends that in this filing, it "requested the Court to order the roles of the

defendants and plaintiff reversed because the only matters to be tried were Burke's/QFI's

affirmative defense to Dorocon's breach of contract claims against them and Burke's/QFI's breach

of contract counterclaim."  *Id.* (citing J. Status Report at 3).  Plaintiff argues that Defendants

admitted joint and several liability by acknowledging in their section in the Joint Status Report:

> The remaining issues in this case are set forth in the Court's Memorandum Opinion,
> and concern Dorocon's breach of the parties' contract by failing to exercise good
> faith.  What constitutes good faith depends on the particular facts of this case.
> Because Defendants agree that they bear the burden to show that, under the
> circumstances presented, Dorocon exercised bad faith in performing its contract
> obligations, and its bad faith amounts to a breach of the parties' agreement,
> Defendants agree to proceed as if they were plaintiffs for the purposes of
> demonstrating Dorocon's breach of contract at trial, while making clear that they did
> not initiate the suit and asserted their counterclaim only after Dorocon filed suit.
> Defendants note that they have not once been asked their position on this matter.

*Id.* (citing J. Status Report at 3).

However, upon a review, the relevant provision in the Joint Status Report clearly provides

no basis for which to conclude that Defendants somehow explicitly and intentionally conceded that

they are jointly and severally liable for any damages under the Consulting Agreement.  All

Defendants conceded in the Joint Status Report was that they would present their case first, and that

Defendants' remaining claims concerned whether Plaintiff had breached its duty of good faith and

fair dealing.  Having maintained a rather consistent separation between QFI and Ms. Burke during

the pleading process in this case, and with Plaintiff having presented no significant argument or

evidence otherwise to *establish* proof of joint and several liability, Defendants had no affirmative

duty in the Joint Status Report to raise such an issue.  *See* Fed. R. Civ. P. 8(c); *Peacock v. Thomas*,

516 U.S. 349, 354, 116 S.Ct. 862, 133 L.Ed.2d 817 (1996) ("Piercing the corporate veil is not

itself an independent . . . cause of action, but rather is a means of imposing liability on an underlying

cause of action."); *Flocco v. State Farm Mut. Auto. Ins. Co.*, 752 A.2d 147, 155 (D.C. App. 2000)

(burden on proof rests with the party seeking to pierce the corporate veil).

Moreover, the Court notes that in Plaintiff's portion of the Joint Status Report of January 14,

2005, Plaintiff stressed that

> [t]he matters remaining to be tried in this case are:  (i) defendants' affirmative
> defense to Dorocon's breach of contract claim – based upon the alleged failure of
> Dorocon to comply with its obligation of good faith and fair dealing under the
> contract; and (ii) defendants' counterclaim for breach of contract – based upon the
> alleged failure of Dorocon to comply with its obligation of good faith and fair
> dealing under the contract.

J. Status Report at 3.  When reading this provision as strictly and in the same manner as Plaintiff

construes Defendants' portion, the reader might conclude that Plaintiff had waived or conceded any

other issue.  However, during pre-trial briefing in September and October 2005, Plaintiff raised a

host of other issues not cited in this paragraph that it claimed remained to be tried, including, *inter

alia*, a claim for prejudgment interest, a statute of limitations defense, and an affirmative defense

based on Defendants' alleged failure to mitigate damages – most of which the Court addressed in its

November 1, 2005 Memorandum Opinion.  *See Dorocon v. Burke*, Civ. No. 02-2556(CKK)

(D.D.C. Nov. 1, 2005).  Accordingly, Plaintiff cannot now claim that the parties intended the Joint

Status Report to include all the issues remaining for trial or that Defendants judicially admitted Ms.

Burke's personal liability by agreeing to proceed first.

In sum, upon a review of (1) Plaintiff's Complaint and Defendants' Answer; (2) Plaintiff's

Statement of Material Facts Not in Dispute and Defendants' Response to Dorocon's Fact Assertions

and Statement of Disputed and Undisputed Facts; (3) Plaintiff's Motion for Summary Judgment and

Defendants' Opposition; and (4) the parties' Joint Status Report, the Court concludes that these

provisions provide no basis for Plaintiff's waiver argument, as Defendants have neither admitted

joint and several liability, nor waived any opposition to such an argument. Nowhere did Defendants

explicitly and intentionally concede the joint and several liability of Defendants QFI and Burke

under the Consulting Agreement. Instead, the record is replete with instances where Defendants

specifically maintain the position that Defendant Burke's liability is a separate and distinct issue

from Defendant QFI's liability under the 1993 Consulting Agreement. As such, the Court's

November 1, 2005 ruling was not "clearly erroneous," a "manifest injustice," or a "surprise" in that

respect.

> B.      Was the Issue Actually Litigated by the Parties and Actually Decided by the Court
>         Such that the "Law-of-the-Case Doctrine" Applies?

Plaintiff's next argument that the Court's November 1, 2005 Memorandum Opinion with

respect to the "alter ego"/"piercing of the corporate veil"/"joint and several liability" issue was

clearly erroneous centers around the "correct" reading of the Court's September 27, 2004

Memorandum Opinion and Order, which addressed Plaintiff's Motion for Summary Judgment. *See*

Pl.'s Mot. for Recons. at 4, 6. According to Plaintiff's analysis, a "plain reading and good faith

interpretation of the Court's September 27, 2004 Memorandum Opinion" indicates "that the Court

had already concluded that Burke and QFI were each liable for all of the amounts which QFI failed

to pay to Dorocon under the Contract." *Id.* at 6. As such, Plaintiff is implicitly arguing that the

"law-of-the-case doctrine" applies, shutting out further argument around or consideration of the

issue of joint and several liability under the Consulting Agreement.

When issues have been resolved at a prior stage in the litigation, based upon principles of judicial economy, courts generally decline to revisit these issues. *See New York v. Microsoft*, 209 F. Supp. 2d 132, 141 (D.D.C. 2002) (Kollar-Kotelly, J.).  More than a mere rule-of-thumb, the "'law-of-the-case-doctrine' refers to a family of rules embodying the general concept that a court involved in later phases of a lawsuit should not reopen questions decided (i.e., established as the law of the case) by that court or a higher one in earlier phases." *Crocker v. Piedmont Aviation, Inc.*, 49 F.3d 735, 739 (D.C. Cir. 1995).  "The doctrine bars reconsideration of the court's *explicit* decisions, as well as those issues decided by necessary implication." *Microsoft*, 209 F. Supp. 2d at 141 (emphasis added) (citing *LaShawn A. v. Barry*, 87 F.3d 1389, 1394 (D.C. Cir. 1996) (en banc) ("The law-of-the-case doctrine, the Supreme Court said, turns 'on whether a court previously decide[d] upon a rule of law  . . . not whether, or how well, it explained the decision.'") (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988) (alteration in *Christianson*)).

There are two important considerations when dealing with the "law-of-the-case doctrine." First, the doctrine applies only where "an issue is . . . litigated and decided . . . ." *Nat'l Souvenir Ctr., Inc. v. Historic Figures, Inc.*, 728 F.2d 503, 510 n.3 (D.C. Cir. 1984) (quoting 18 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 4478 (1st ed. 1981)); *see also Columbia Cas. Co. v. Columbia Hosp. for Women*, 633 F. Supp. 697, 700 n.2 (D.D.C. 1986) ("[T]here is nothing to suggest that [the] issue was litigated and decided so that the 'law of the case' applies.") (citation omitted); *Jackson v. Sec. Fin. Group*, 42 B.R. 76, 82 (Bankr. D.D.C. 1984) ("[O]ne of the essentials for . . . law of the case to apply is missing, in that the matter now at issue has not been actually decided in the prior ruling.") (citing

*Stebbins v. Keystone Ins. Co.*, 481 F.2d 501 (D.C. Cir. 1973)).  Second, "[l]aw of the case is a

prudential rule rather than a jurisdictional one; in the words of Justice Holmes, the doctrine 'merely

expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to

their power.'" *Crocker*, 49 F.3d at 739-40 (quoting *Messenger v. Anderson*, 225 U.S. 436, 444, 32

S.Ct. 739, 56 L.Ed.2d 1152 (1912); citing *Arizona v. California*, 460 U.S. 605, 618, 103 S.Ct.

1382, 75 L.Ed.2d 318 (1983) ("Law of the case directs a court's discretion[;] it does not limit the

tribunal's power.")).

In its Motion for Reconsideration, Plaintiff focuses on various passages in the Court's

September 27, 2004 Memorandum Opinion to emphasize the Court's joint treatment of QFI and

Ms. Burke under the term "Defendants."  *See* Pl.'s Mot. for Recons. at 4-5.  Plaintiff emphasizes

this section of the Court's Memorandum Opinion in particular:

> Plaintiff presents four claims against Defendants, each of which alleges that
> Defendants breached the Contract . . . . [T]he only terms that can be considered part
> of the agreement between the parties are included in the written Contract, that these
> terms unambiguously require Defendants to make periodic payments under
> Paragraph 2 . . . and that Defendants have failed to make these payments in full.  The
> Court finds, however, that a genuine issue of material fact exists whether Plaintiff
> breached the Contract . . . . If such breach has occurred, and if the Court deems this
> breach to be material, then Defendants' failure to pay Plaintiff the entire amount due
> under Paragraph 2 would be excused . . . .

*Id.* at 4 (quoting *Dorocon v. Burke*, Civ. No. 02-2556(CKK), at 1-2 (D.D.C. Sept. 27, 2004)).

Plaintiff also contends that "[t]he Court made numerous other findings and conclusions which are

completely consistent with this summary," specifically:  "[b]y signing the Contract, therefore,

Defendants agreed to pay Dorocon a percentage of Queen's Fare's gross sales for the duration of the

Contract"; "Paragraph 2 of the Contract required Defendants to pay Plaintiff 8.75 percent of

Queen's Fare's gross revenues"; and "[t]he Contract also requires Defendants to pay Plaintiff a

monthly automobile, travel and expense allowance." *Id.* at 4-5 (quoting quoting *Dorocon v. Burke*,

Civ. No. 02-2556(CKK), at 52, 57 & n.49 (D.D.C. Sept. 27, 2004)).

However, these passages of the Court's September 27, 2005 Memorandum Opinion cannot stand for the principle that the Court ruled that QFI and Ms. Burke are jointly and severally liable for any damages under the Consulting Agreement.  Importantly, the "law-of-the-case doctrine" requires that an issue is (1) litigated and then (2) decided.  As the Court has already established, *see supra* Section III(A)(3), the issue of Ms. Burke's liability under the Consulting Agreement was never specifically litigated by the parties at the summary judgment phase of the litigation, nor was it conceded by Defendants in any respect.  As such, one of the two crucial elements of the "law-of-the-case doctrine" is not present.  Moreover, the Court's September 27, 2004 Memorandum Opinion never actually *decided* the issue in any respect.  Oblique references to and generalized groupings of the parties at issue do not constitute an extended, reasoned analysis by the Court deciding an important point of law.  Nowhere in the Court's Memorandum Opinion does the Court explicitly analyze the obligations of QFI and Ms. Burke under the Consulting Agreement and conclude that the very terms of the contract made Ms. Burke jointly and severally liable with QFI for any damages that may have arisen under the Agreement.  Such a question was certainly not put before the Court by Plaintiff in any significant or detailed way; instead of offering detailed argument and proof, as was its burden, Plaintiff – at best – made certain assumptions in one footnote in its Motion for Summary Judgment and one-half of a sentence in its Reply that the Court did not directly address.  Accordingly, both elements to establish the "law-of-the-case doctrine" are not present in the context.

Rather than *assume* that the Court's intermittent groupings of QFI and Ms. Burke throughout its September 27, 2004 Memorandum Opinion constituted a definitive finding that the terms of the Consulting Agreement established Ms. Burke's joint and several liability for any damages, Plaintiff should have taken one of two actions:  (1) Plaintiff should have filed a Motion for

Clarification of the Court's September 27, 2004 Memorandum Opinion requesting that the Court specifically detail if it had made a conclusive finding as to the liability of Ms. Burke under the Consulting Agreement, i.e., whether she was jointly and severally liable by the terms of the Agreement, or whether she could only be held liable under an "alter ego" theory; or (2) Plaintiff should have broached the issue with the Court at the status conference held on January 18, 2005. Plaintiff took neither of these prudential steps, and assumed that an issue had been decided when it had never been properly raised and had never been explicitly addressed by the Court.[1]

> C.     *Were the Relevant Legal and Factual Determinations that the Court Made on the Issue of Ms. Burke's Liability in its November 1, 2005 Memorandum Opinion Clearly Erroneous, a Manifest Injustice, or an Unfair Surprise?*

Importantly, in Plaintiff's Motion for Reconsideration, Plaintiff does not attempt to attack or undermine the Court's central reasoning in its November 1, 2005 Memorandum Opinion regarding the legal arguments for, the burden to show, and the application of an "alter ego"/"piercing of the corporate veil" theory to establish the personal liability of Defendant Burke. *Compare* Pl.'s Mot. for Recons. *with Dorocon v. Burke*, Civ. No. 02-2556(CKK), at 6-9 (D.D.C. Nov. 1, 2005). Central to the Court's holding was this specific analysis:

> Upon a reading of the plain language of the 1993 Consulting Agreement, it is clear that the Agreement requires only that Queen's Fare, not Ms. Burke, make payments

---

[1] Plaintiff did attempt to take a second bite of the apple by filing a Second Motion for Summary Judgment on November 24, 2004. *See* Pl.'s Second Mot. for Summ. J. Once again, this motion did not deal directly with Ms. Burke's individual liability under the Consulting Agreement, or offer any extensive argument or evidence on the topic. Rather, Plaintiff's motion focused entirely on two points: (1) Plaintiff's claim that "[b]ecause Defendants bear the burden of proof on all of the remaining issues, Dorocon does not need to negate Defendants' contentions to obtain final summary judgment," *id.* at 3; and (2) Plaintiff's argument that "Defendants can produce no evidence to show that any genuine issue of material fact exists to be tried concerning Dorocon's 'obligation of good faith and fair dealing' under the Contract," *id.* The Court, in a Minute Order on November 30, 2004, stayed briefing and consideration of this second motion, squelching Plaintiff's attempt to re-litigate issues already decided in its September 27, 2004 Memorandum Opinion.

to Dorocon.  *See* Agreement at 1, ¶ 1 ("Dorocon agrees to provide such consulting services as reasonably required in its judgment to assist QFI . . . ."); *id.* at 1, ¶ 2 ("QFI agrees to pay Dorocon for such services"); *id.* at 2, ¶ 3 ("QFI shall pay to Dorocon a monthly automobile, travel and expense allowance"); *id.* at 3 (Regina Burke-Medeiros, signing as "President, Queen's Fare, Inc.").  Ms. Burke's only explicit contractual obligation to Plaintiff is her acknowledgment that the contract "shall encompass operations at Boston Logan International Airport and at any other airport location subsequently operated by QFI or [Burke] or any other entity controlled by either of them."  *Id.* at 2, ¶ 4.  Where, as here, separate parties have separate obligations under the same contract, "it is the same as though each has executed separate instruments . . . [and] each party is bound separately for the performance which he or she promises, and is not bound jointly with anyone else." 12 Williston on Contracts § 36:1 (4th ed. 1999); *see also* 9 Corbin on Contracts 625, § 926 (interim ed. 2002) ("The question whether two or more promissors have promised a single undivided performance, or have each promised a limited and separate performance is wholly a problem of interpretation.  The question is merely what was the performance promised and who promised it.").  Here, the Consulting Agreement does not contain a provision explicitly stating that the obligations of Queen's Fare and Ms. Burke are joint and several.

Accordingly, the relevant question becomes whether the corporate veil surrounding Queen's Fare may be breached so that Ms. Burke may be held personally liable for Queen's Fare's contract debts.

*Dorocon v. Burke*, Civ. No. 02-2556(CKK), at 6 (D.D.C. Nov. 1, 2005).

In light of this holding, Plaintiff's now contend that "[i]f the Court disagreed with Dorocon's position and interpretation (as the Court did when it ruled on 11/1/2005), Dorocon's breach of [contract] claims against Burke individually then had not yet been decided or determined by the Court."  Pl.'s Mot. for Recons. at 6.  According to Plaintiff's reasoning, "Dorocon fully expected that it would be permitted to present evidence to the jury about the meaning of the Contract language which Dorocon contends is the basis for personal liability based upon Burke's own breach of the Contract, *e.g.*, by causing QFI not to pay Dorocon."  *Id.*  Because the Court's Memorandum Opinion thwarted this plan, Plaintiff argues that the Court somehow wrongfully "dismiss[ed] Dorocon's claims that Burke breached her contractual obligations to Dorocon under the Contract – in Counts I, II, and III of the Complaint – on the eve of a jury trial . . . ."  *Id.* at 1.

Plaintiff's argument rests upon numerous flawed assumptions.  First, Plaintiff chose to sue Defendant Burke in her individual capacity, along with the corporation QFI.  As the Court found when presented with a fully briefed argument by both parties regarding the burdens of proof at trial, the unambiguous language of Paragraph 2 of the Consulting Agreement obligated only QFI to make payments to Plaintiff under the Agreement.  Plaintiff presents no argument in its Motion for Reconsideration disputing this.  Nothing in the four corners of the Consulting Agreement made this obligation joint and several, or otherwise personally obligated Defendant Burke to make payments in her personal capacity.  Plaintiff does not dispute this fact either.[2]  As this Court has repeatedly held, Defendant Burke has never admitted or conceded that she is personally liable for QFI's debts under the Agreement; in fact, to do so would negate the very purpose of (1) forming the corporation itself or (2) including QFI as an explicit obligator under the Agreement.  *See United States ex rel. Kneepkins v. Gambro Healthcare, Inc.*, 115 F. Supp. 2d 35, 39 (D. Mass. 2000) (it is black-letter law that the corporate form exists to limit personal liability).  Despite Plaintiff's protestation that the Court has somehow unfairly "dismissed" its contract claims against Defendant Burke, Plaintiff has always been required to prove the corporate entity should be disregarded in order to show Ms. Burke's personal liability under the Consulting Agreement.  As noted previously, recognition of this fact is implicit in Plaintiff's Complaint, which echoes the requirements of an "alter ego"/"piercing of

_____

[2] Plaintiff does suggest that Paragraph 4 of the Contract somehow laid the basis for Ms. Burke's joint and several liability under the Agreement.  *See* Pl.'s Reply to Def.'s Opp'n to Pl.'s Mot. for Recons. at 2, ¶ 3 ("Burke's undertaking of the obligations referred to in Paragraph 4 of the Contract – as an individual signatory to the Contract – memorialized her promise to Dorocon that Burke would cause QFI to fully perform all of QFI's obligations under the Contract.").  As discussed *infra*, (1) this is a completely new argument by Plaintiff that is improper at this point, (2) the Court, at the Status Conference on November 2, 2005 concluded that a plain reading of Paragraph 4 would not support this claim, and (3) the Court, at the November 2 conference, specifically rejected Plaintiff's attempt to make a new argument surrounding this provision or a "good faith and fair dealing" claim against Defendant Burke.  *See* Nov. 2, 2005 Tr. at 78:1-20.

the corporate veil" argument.  *See supra* Section III(A)(1).

Second, contrary to its suggestion, Plaintiff has no other issue for submission to the jury with respect to Defendant Burke's personal liability for damages resulting from a breach of the Consulting Agreement.  A plain reading of Plaintiff's Motion for Reconsideration makes it apparent that Plaintiff planned on introducing one of two new, alternate theories for relief "under" the Consulting Agreement to the jury:  (1) an argument that Defendant Burke breached the duty of good faith and fair dealing by "causing" QFI to breach the Agreement; and/or (2) the Consulting Agreement is not fully integrated, and therefore consistent oral terms prohibited Ms. Burke from "causing" QFI to breach the Agreement.  *See* Pl.'s Mot. for Recons. at 7 ("Dorocon viewed the issues of whether Burke was personally liable based upon her causing QFI not to pay Dorocon."); *id*. at 9 ("This is basic because the Court has ruled that the Contract is not fully integrated."). Multiple problems exist with Plaintiff's attempt to circumvent the realities of the corporate entity.

As an initial matter, the Court has already decided the central issue on which Plaintiff claims that it intended to present evidence – i.e., whether a "meaning of the Contract language" could provide a basis for Ms. Burke's personal liability.  In the Court's September 27, 2004 Memorandum Opinion, the Court emphasized that Paragraph 2, the relevant payment provision in the Consulting Agreement, is unambiguous – "The Court cannot see an alternative way of interpreting this particular provision and therefore must conclude that Paragraph 2 is *not* 'reasonably or fairly susceptible of different constructions or interpretations, or of two or more different meanings . . . .'" *Dorocon v. Burke*, Civ. No. 02-2556(CKK), at 52 (D.D.C. Sept. 27, 2004) (emphasis in original) (citing *Holland v. Hannan*, 456 A.2d 807, 815 (D.C. 1983)).  The Court clarified the reach of this ruling in its November 1, 2005 Memorandum Opinion, finding that "[u]pon a reading of the plain language of the 1993 Consulting Agreement, it is clear that the Agreement requires only that

Queen's Fare, not Ms. Burke, make payments to Dorocon." *Dorocon v. Burke*, Civ. No. 02-2556(CKK), at 6 (D.D.C. Nov. 1, 2005).  As such, because the payment term is clearly unambiguous, there is no question for the jury to determine the correct interpretation of the provision.  As the Court noted in its September 27, 2004 Memorandum Opinion, this provision ensures that "Defendants" can be held liable for any non-payments to Plaintiff; but, as explained in the November 1, 2005 Memorandum Opinion, while QFI's liability would be direct, Defendant Burke's personally liability could be established only through an "alter ego"/"piercing the corporate veil" theory.

Moreover, as the Court repeatedly emphasized to Plaintiff at the November 2, 2005 pre-trial status conference, Plaintiff is not entitled to raise entirely new claims against Defendant Burke at this time.  As the Court pointed out, Plaintiff had never raised its quasi-"good faith and fair dealing" claim against Defendant Burke until November 2, 2005 – Plaintiff never pleaded this claim and the parties never conducted discovery around the issue.  Plaintiff cannot now – just weeks from trial[3] – expect to bring such an argument before a jury.

Additionally, the Court emphasizes that Plaintiff has never claimed, and instead has consistently disputed, that any oral terms to the Consulting Agreement exist.  Plaintiff's Complaint contains no allegations of oral terms, *see* Compl. ¶ 7 ("On or about October 1, 1993, Dorocon, Burke, and QF entered into a certain *written* contract, a true copy of which is attached hereto as Exhibit 1.") (emphasis added), and when the issue was hotly contested at the summary judgment stage, Plaintiff consistently maintained that the written Consulting Agreement contained *all* material terms between the parties, *see* Def.'s Reply to Pl.'s Opp'n to Def.'s Mot. for Summ. J. at 11-13.

---

[3] Trial in this case is currently scheduled for the week of January 23 - 27, 2006.

The Court essentially agreed with Plaintiff's contention in its September 27, 2004 Memorandum

Opinion, stressing that "[t]here are no additional, consistent[] oral terms." *Dorocon v. Burke*, Civ.

No. 02-2556(CKK), at 46 (D.D.C. Sept. 27, 2004). Accordingly, at this late stage of the litigation,

Plaintiff cannot now reverse its long-held position vis-á-vis oral terms; even if Plaintiff could, it

would be judicially estopped from doing so pursuant to the Court's previous findings.

Finally, Plaintiff's argument that "Burke personally breached the Contract" by "causing"

QFI not to pay Plaintiff is fundamentally unavailing; indeed, such a claim is essentially the same as

an argument for disregarding the corporate entity. Plaintiff does not dispute that QFI was a

corporation, and that Ms. Burke exercised control over QFI by operation of her position as an officer

and the sole shareholder. Moreover, Plaintiff does not – and cannot – point to any agreement

between the parties where Defendant Burke personally guaranteed QFI's payment obligations or

where Ms. Burke otherwise agreed to be personally liable for them. Indeed, the explicit terms of the

1993 Consulting Agreement specifically contemplate that payment liability would rest with QFI.

*See* Agreement at 1-2, ¶¶ 2-3. In comparison, Paragraph 4, the new-found focus of Plaintiff's

attention, merely declares, *in toto*: "QFI and [Burke] agree that this Agreement shall encompass

operations at Boston Logan International Airport and at any other airport location subsequently

operated by QFI or [Burke] or any entity controlled by either of them." *See id*. at 2, ¶ 4. Nowhere

has Plaintiff ever previously alleged that Defendant Burke somehow breached Paragraph 4 (as only

two Dunkin Donuts were ever opened by QFI, both at Logan International), and nowhere does

Paragraph 4 provide a basis for joint and several liability for non-payment or breach. Upon a clear-

headed review, Plaintiff's logic would make an agent who signs a contract on behalf of their

corporation *personally* liable for the obligations inherent in the agreement – a result clearly not

contemplated by basic corporate law. Ultimately, the facts and arguments at hand suggest nothing

28

more than a classic situation in which a plaintiff must show "alter ego"/"piercing of the corporate veil" facts against an individual defendant.

Given these considerations, the Court concludes that its holding with respect to the "piercing the corporate veil" issue and Defendant Burke's personal liability in its November 1, 2005 Memorandum Opinion was factually accurate and legally correct.  As such, Plaintiff cannot meet the standards under either Federal Rule of Civil Procedure 59(e) or 60(b) to establish the need for reconsideration and reversal.  Accordingly, the Court shall deny Plaintiff's motion.

### IV: CONCLUSION

For the reasons set forth above, the Court shall deny Plaintiff's Motion for Reconsideration. An Order accompanies this Memorandum Opinion.


Date:   December 16, 2005


                              _____/s/_____
                              COLLEEN KOLLAR-KOTELLY
                              United States District Judge