UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DOROCON, INC.,

    Plaintiff,

     v.

REGINA BURKE, *et al.*,

    Defendants.

Civil Action No. 02-2556 (CKK)

## MEMORANDUM OPINION
(February 27, 2006)

Currently before the Court is Dorocon's Motion for a New Trial, Defendant Queen's Fare's and Regina Burke's Opposition, and Dorocon's Reply. Upon a searching examination of the present filings, the attached exhibits, the relevant case law, and the entire record herein, the Court shall deny Dorocon's Motion for a New Trial.

## I: BACKGROUND

On September 27, 2004, this Court issued a lengthy Memorandum Opinion and Order resolving Dorocon's Motion for Summary Judgment. In its Memorandum Opinion, the Court determined that Queen's Fare had not fully performed under the 1993 Consulting Agreement signed between the parties, and, in fact, had underpaid Dorocon by $770,250. *See Dorocon v. Burke*, Civ. No. 02-2556(CKK), at 52, 57-59 (D.D.C. Sept. 27, 2004). Moreover, the Court found that – pursuant to the terms of the contract – Dorocon was not explicitly required under the Agreement to provide any post-contract consulting services. *Id.* at 55-56. However, the Court, looking at Defendants' various counterclaims, also concluded that Dorocon owed Defendants Queen's Fare and Regina Burke a duty of good faith and fair dealing not to unreasonably and arbitrarily exercise

its judgment in determining what consulting services were reasonably required under the contract. *Id*. at 56-57.  Finding a genuine issue of material fact as to whether Dorocon breached this duty of good faith and fair dealing implied in the contract, the Court noted that "[i]t will therefore be for the jury to determine whether Plaintiff has breached the implied duty of good faith and fair dealing by 'evading the spirit of the contract' and exercising its discretion in an arbitrary or unreasonable manner."  *Id*. at 57 (citations omitted).  Accordingly, the Court met with the parties on January 18, 2005, set forth a schedule for pre-trial filings, and set a trial date of November 8, 2005 to resolve the remaining factual issue in the above-captioned action.

After a series of pre-trial hearings on November 1 and 2, 2005, the Court continued the trial date in this case to January 23, 2006 in order to allow the Court and parties additional time to resolve certain evidentiary disputes.  *See Dorocon v. Burke*, Civ. No. 02-2556 (D.D.C. Nov. 9, 2005) (Minute Order continuing trial).  Following the resolution of all pre-trial matters, a trial was held in this action from Monday, January 23, 2006 to Thursday, January 26, 2006 revolving around Defendants' "breach of good faith and fair dealing" affirmative defense and counter-claim. Following less than two (2) total hours of deliberations, the jury reached a unanimous verdict on the morning of Friday, January 27, 2006 in favor of Defendants Queen's Fare and Regina Burke, finding in the affirmative when posed with the verdict form question:

> Did Queen's Fare prove its affirmative defense and did Queen's Fare and Regina Burke prove their counterclaim against Dorocon and show by a preponderance of the evidence that Dorocon breached its duty of good faith and fair dealing when exercising its discretion under the Consulting Agreement in determining what consulting services were reasonably required to assist Queen's Fare?

*See* Defs.' Opp'n to Pl.'s Mot. for New Trial ("Defs.' Opp'n), Ex. D (Verdict Form) at 1; *see also* Pl.'s Mot. for New Trial, Ex. 1 (1/27/06 Note From Jury) (noting a time of 10:50 a.m. when verdict was reached).  Pursuant to this verdict, the jury determined that Queen's Fare was excused from

paying the additional $770,250 owed to Dorocon under the Consulting Agreement, and Dorocon

was required to fully remit the $665,000 already paid by Queen's Fare under the contract due to its

breach of the implied obligation of good faith and fair dealing.  *See* 1/26/06 Stipulation Between the

Parties (Docket Entry #77).

Following the issuance of this verdict, Dorocon filed a Motion for a New Trial on February

6, 2006, in which Dorocon asserts that a new trial in this case is justified for two reasons.  First,

according to Dorocon, a clerical error contained in the "Note From Jury" form prepared by the

Court's Deputy Courtroom Clerk identifying the case as "CRIMINAL NO. 02-2556 (CKK)" rather

than the correct "Civil Action No. 02-2556 (CKK)" "quite likely, if not extremely probabl[y] . . .

may have affected or poisoned some of the jurors against Dorocon."  Pl.'s Mot. for New Trial at 2-3.

Second, Dorocon contends that the "clear" weight of the evidence showed that Dorocon committed

no breach of the covenant of good faith and fair dealing or – if evidence of a breach was presented –

the weight of the evidence showed that the breach was not material.  *Id.* at 4, 6.

## II: LEGAL STANDARDS

Although Dorocon never identifies the explicit Federal Rule of Civil Procedure under which

it is proceeding, Dorocon is apparently seeking a new trial under Federal Rule of Civil Procedure

59(a).  Under Rule 59 of the Federal Rules of Civil Procedure, a "new trial may be granted . . . in an

action in which there has been a trial by jury, for any of the reasons for which new trials have

heretofore been granted in actions at law in the courts of the United States[.]"  Fed. R. Civ. P. 59(a).

"The standard for a new trial is less onerous than the one applicable to a Rule 50 motion."  *Nyman

v. Fed. Deposit Ins. Co.*, 967 F. Supp. 1562, 1569 (D.D.C. 1997) (citing *Lewis v. Elliott*, 628 F.

Supp. 512, 516 (D.D.C. 1986)).  "[C]ourts should not grant new trials without a solid basis for

doing so."  *Webb v. Hyman*, 861 F. Supp. 1094, 1109 (D.D.C. 1994).  Indeed, "as a general

practice, a Rule 59(a) motion should be granted only where the court is convinced that the jury

verdict was a 'seriously erroneous result' and where denial of the motion will result in a 'clear

miscarriage of justice.'" *Id.* at 1109-10 (citations omitted).  "[T]he standard for granting a new trial

is not whether minor evidentiary errors were made in the course of a long trial, but rather whether

there was a 'clear miscarriage of justice.'" *Dickerson v. HBO & Co.*, Civ. No. 92-2758, 1995 WL

767177, at *2 (D.D.C. Dec. 21, 1995) (citing *Sedgwick v. Giant Food, Inc.*, 110 F.R.D. 175, 176

(D.D.C. 1986)); *see also* 11 CHARLES ALAN WRIGHT & ARTHUR R. MILLER & MARY KAY KANE,

FEDERAL PRACTICE AND PROCEDURE § 2805, at 60 (2d ed. 1995) ("[I]t is only those errors that have

caused substantial harm to the losing party that justify a new trial.  Those errors that are not

prejudicial do not call for relief under Rule 59.").  In general, grounds for granting a new trial

include findings that the verdict is against the weight of the evidence, damages are excessive, for

other reasons the trial was not fair, or substantial errors occurred in the admission or rejection of

evidence or the giving or refusal of instructions.  11 CHARLES ALAN WRIGHT & ARTHUR R. MILLER

& MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2805, at 54 (2d ed. 1995).

    "Regardless of the way a party characterizes a motion, a post-judgment filing challenging

the correctness of the judgment falls within the perimeter of Rule 59(e)." *Nyman*, 967 F. Supp. at

1569 (citing *Dove v. Codesco*, 569 F.2d 807, 809 (4th Cir. 1978); 9 MOORE'S FEDERAL PRACTICE

§ 204.12[1] at 4-67 (1987)).  A motion for a new trial under Rule 59(e) has four important

characteristics.  First, the burden of showing that a new trial is warranted rests with the moving

party.  *Webb*, 861 F. Supp. at 1109; 11 CHARLES ALAN WRIGHT & ARTHUR R. MILLER & MARY

KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2803, at 47 (2d ed. 1995).  Second, a motion for

a new trial may not be used to raise arguments which could, and should, have been made before the

judgment issued.  *See Kattan v. Dist. of Columbia*, 995 F.2d 274, 276 (D.C. Cir. 1994); *Fed.*

*Deposit Ins. Corp. v. Meyer*, 781 F.2d 1260, 1268 (7th Cir. 1986). Third, the determination of a motion for new trial pursuant to Rule 59 rests in the sound discretion of the trial court, and may be reviewed only for abuse of discretion. *Langevine v. Dist. of Columbia*, 106 F.3d 1018, 1023 (D.C. Cir. 1997) (citations omitted). Fourth, and finally, "[i]n deciding whether to grant a new trial, the court should be mindful of the jury's special function in our legal system and hesitate to disturb its finding." *Lewis*, 628 F. Supp. at 516 (internal citations omitted).

## III: DISCUSSION

The Court shall deal with Dorocon's two arguments in turn. The Court shall first address the issue of the clerical error in the "Note From Jury" form provided to the jury, Pl.'s Mot. for New Trial at 2-4, and then shall examine Dorocon's contention that "the jury verdict is against the clear and great weight of the evidence," Pl.'s Reply at 2.

> A.   *Even Assuming the Typographical Mistake Constitutes "Error," the Error Was Harmless*

Dorocon's first major argument in support of its Motion for a New Trial revolves around the idea that a clerical error by the Court's Deputy Courtroom Clerk on the "Note From Jury" form provided to the jurors on the eve of their deliberations – mistakenly identifying the caption of the case as "CRIMINAL NO. 02-2556 (CKK)" instead of "Civil Action No. 02-2556 (CKK)" – was sufficiently serious as to constitute "a clear miscarriage of justice" that could have led to a "seriously erroneous result." Pl.'s Mot. for New Trial at 2-4; Pl.'s Reply at 1-2. According to Plaintiff, given that it raised certain questions during trial regarding possible under-reporting on Defendant Queen Fare's federal income tax returns, the erroneous caption on the juror note form "may have affected or poisoned some of the jurors against Dorocon (or in favor of Burke/QFI) because certain Jurors [could have been] adamant about not doing anything in their verdict which

5

could heighten or expose Burke and/or QFI to possible or increased criminal jeopardy for legal reasons which the Jurors could reasonably have believed the Court was intentionally otherwise keeping from them for 'legal reasons.'" Pl.'s Mot. for New Trial at 3.

Dorocon's "clerical error" argument fails for three reasons.  First, this kind of simple, clerical mistake is insufficient to meet the standards of a new trial under Federal Rule of Civil Procedure 59.  As noted above, courts within the jurisdiction have consistently held that new trials under Federal Rule of Civil Procedure 59(a) are reserved for situations involving "manifest errors of law or fact."  *See Wild v. Alster*, 377 F. Supp. 2d 186, 188 (D.D.C. 2005) (citing *Nyman*, 967 F. Supp. at 1569).  The typographical error focused on by Dorocon was not in the Jury Instructions read by the Court and provided to the jurors, the Verdict Form given to the jurors, or any other document presented into evidence at trial.  Rather, the error was in a non-substantive portion – i.e., the caption – of a largely blank "Jury Note Form" presented to the jurors on the morning of their deliberations such that they could communicate with the Court regarding any potential questions or issues.  *See* Pl.'s Mot. for New Trial, Ex. 1 (1/27/06 Note From Jury).  The caption is not evidence, nor is it a statement of law or a finding of fact, let alone a "manifest error" of either.  Moreover, the only "Note From Jury" provided by the jurors in this action to the Court was sent at 10:50 a.m. on January 27, 2006, informing the Court "We have reached a unanimous verdict."  *Id.*  Because (1) this was the only note provide by the jurors to the Court, meaning that they had no prior opportunities to see the erroneous caption, and (2) the note is in the past tense, it can be inferred that the note was necessarily written *after* the jury had already completed their deliberations.  Such a "minor error" is simply not grounds for a new trial.  *See Wild*, 377 F. Supp. 2d at 189.

Second, Dorocon has failed to meet its burden to show that a "clear miscarriage of justice" will occur unless it is granted a new trial.  A review of its filings reveals that Dorocon simply asserts

that jurors "could recognize" that Queen's Fare's 2002 tax returns "could very likely have Federal criminal ramifications for Burke/QFI" and that this information "could very likely have affected or poisoned the jury deliberations." *See* Pl.'s Mot. for New Trial at 2-3.  The foundation of Dorocon's argument is speculation and conjecture.  Dorocon has no direct evidence that the incorrect caption ever caught the eye of a juror, let alone that such a typographical error played a significant and decisive role in the speedy deliberations of the jury on the morning of January 27, 2006.  Dorocon simply has no evidence showing "a clear miscarriage of justice" flowing from the mistake.  *Cf. Piaubert v. Macintosh*, 10 Fed. Appx. 503, 505-07 (9th Cir. 2001) (new trial motion on the grounds of clerical error in the verdict form correctly denied, as the error was harmless given that (1) the jury's response was consistent with the defendant's arguments at trial; (2) the jury had been properly instructed; and (3) if the jury noticed the mistake or otherwise became confused, they could have asked about it).

Third, even assuming *arguendo* that the typographical mistake qualifies as an "error" for the purposes of a Rule 59 analysis, such an error is clearly harmless under Federal Rule of Civil Procedure 61.  Rule 61 provides:

> No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice.  The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

Fed. R. Civ. P. 61.  Under Rule 61, misconduct or error alone is insufficient to justify a new trial; rather, the movant must show that any "error" impact its substantial rights.  *See Summer v. Howard Univ.*, 374 F.3d 1188, 1193 (D.C. Cir. 2004).

In its filings, Dorocon presented no facts showing that the typographical error in the "Note From Jury" form caption affected its substantial rights. At trial, the Court explicitly informed the jury pool at the start of the *voir dire* process that the case involved a civil contract dispute, not a criminal matter. *See* Def.'s Opp'n, Ex. B (Civil Trial *Voir Dire*) at 1 ("This is a civil case . . . . This is a contract dispute."). Given the fact that the United States was not a party in this case, the jurors could also have easily inferred that the case was not a criminal action. Additionally, both the Jury Instructions and the Verdict Form provided to the jurors and actually filled out by the jury correctly state the civil standard of "a preponderance of the evidence" when referring to whether Queen's Fare and Regina Burke had met their burden of showing that Dorocon breached its duty of good faith and fair dealing. *Id.*, Ex. C (Jury Instructions, Part II) at 3, 4, 9; *id.*, Ex. D (Verdict Form) at 1. Moreover, the caption on the Verdict Form prepared by the Court, provided to the jurors, and filled out by the jury correctly states that this case was a civil matter. *Id.*, Ex. D (Verdict Form) (with caption reading, "Civil Action No. 02-2556 (CKK)").

Indeed, the Jury Instructions, to which Dorocon has raised no objection, also specifically set forth the consequences of the jury's decisions. As the Court read to the jurors on the afternoon of January 26, 2006, and as the jurors could read for themselves on the morning of January 27, 2006, if they found for Dorocon, Dorocon would be entitled to $770,250, but if they found for Defendants Queen's Fare and Regina Burke, Dorocon would take nothing and Defendants would be entitled to $665,000. *Id.*, Ex. C (Jury Instructions, Part II) at 3. The Court's instructions also correctly identified the only possible consequence to Regina Burke personally – if the jury found for Dorocon on the first two issues, Ms. Burke would be personally liable to Dorocon for the $770,250 underpayment. *Id.* at 4; *see also id.*, Ex. D (Verdict Form) at 1. In other words, the Court's substantive instructions accurately stated the law, the applicable burden of proof, and correctly

8

described the consequences of the jury's decision.  Indeed, the word "criminal" appears only once in

the entirety of the Court's instructions – in Instruction 2.08 (Burden of Proof), wherein the Court, in

relevant part, emphasized: "The term 'preponderance of the evidence' does not mean that the proof

must produce absolute or mathematical certainty.  For example, it does not mean proof beyond a

reasonable doubt *as is required in criminal cases*."  *See* Jury Instructions (Part II) at 6 (emphasis

added).  As such, the Jury Instructions, coupled with the Court's preliminary instruction to the jury

pool that this was a civil case and the verdict form, demonstrate that any error contained in the

"Note From Jury" is harmless under Federal Rule of Civil Procedure 61.  Accordingly, Dorocon's

motion for a new trial on the grounds of "clerical error" must be denied.

> B.     *The Verdict Was Not Against the Weight of the Evidence*

Dorocon's second major argument in support of its Motion for a New Trial revolves around

its contention that "[t]he jury's verdict is against the clear and great weight of the evidence."  Pl.'s

Mot. for New Trial at 4.  Dorocon makes two arguments in support of this contention.  First,

according to Dorocon, "Burke/QFI failed to introduce any evidence from which a fair minded jury

could conclude that Dorocon breached its obligation of good faith and fair dealing in exercising its

discretion under the Contract in deciding what consulting services QFI reasonably required."  *Id.*

Dorocon emphasizes that "Burke/QFI offered no document during trial to show that they ever

requested Dorocon to provide any specific consulting service notwithstanding Burke's testimony

that Burke.QFI had produced 1,300 pounds of documents during discovery."  *Id.*  Second, Dorocon

contends that "[e]ven if Burke/QFI were able to establish by a preponderance of the evidence that

Dorocon failed to exercise its judgment in good faith from which a fair minded jury could conclude

that such a breach was 'material.'"  *Id.* at 5.  Dorocon stresses that (1) as this Court previously

recognized, the compensation provided to Dorocon under the Consulting Agreement was for *both*

pre-Agreement and post-Agreement services rendered, and (2) "[t]he only trial evidence relating to the 'central purpose of the contract' was the testimony of Mr. Reeves and Mrs. Reeves." *Id.* at 5-6. Given these facts, Dorocon asserts that "[t]he finding which the jury had to have made of a 'material breach' in order to find for Burke/QFI on the Verdict Form is plainly contrary to the clear and great weight of the evidence, and contrary to the only evidence and the Court's prior rulings." *Id.* at 6.

Defendants Queen's Fare and Regina Burke respond by making two major arguments. First, Defendants contend that Dorocon failed to raise this argument at the close of evidence, and its failure to do so forecloses its consideration now. *See* Defs.' Opp'n at 7 (citing *Wild*, 377 F. Supp. 2d at 189) ("motion[s] for a new trial cannot be used to raise arguments which could, and should, have been made before the judgment was issued") & n.2 (noting that Dorocon moved for judgment as a matter of law on the ground that Defendants had purportedly presented insufficient evidence concerning their claim for damages, but later withdrew this motion, which was their only motion regarding the sufficiency of the evidence). Second, Defendants point to the variety of evidence adduced at trial by Ms. Burke, and emphasize the fact that Dorocon's narrow view of its "good faith" obligations does not comport with applicable law. *Id.* at 8-9.

In response, Dorocon effectively concedes that it did not raise an objection regarding the sufficiency of Defendants' substantive evidence at trial, but instead points to an Eighth Circuit case, *Pulla v. Amoco Oil Company*, 72 F.3d 648 (8th Cir. 1995), which stands for the proposition that "a litigant may move for a new trial under Rule 59 based on the overwhelming evidence contrary to the verdict without ever previously raising such an objection." *Id.* at 656 (citing *Harris v. Zurich Ins. Co.*, 527 F.2d 528, 529-30 (8th Cir. 1975)). For the purposes of Plaintiff's motion, the Court considers this dispute to be immaterial, as – in reaching the merits of Plaintiff's sufficiency of the evidence claim – the Court, having observed the trial in this case and issued several lengthy rulings

before trial, in its discretion concludes that the jury's verdict in favor of Defendants was not against the clear weight of the evidence.

Importantly, Dorocon's first argument – i.e., that Defendants never pointed to a specific document requesting consulting services – is irrelevant in this context for two reasons.  First, Dorocon's interpretation that Queen's Fare needed to make a specific request for consulting services before triggering Dorocon's duty of good faith and fair dealing, *see* Pl.'s Mot. for New Trial at 4, is contradicted by the Consulting Agreement signed between the parties, which required that Dorocon "provide such consulting services as reasonably required in its judgment to assist QFI" and Queen's Fare to pay Dorocon "for such services, and for similar services previously rendered by Dorocon and its agents."  *See* Agreement at 1, ¶ 1 ("Dorocon agrees to provide such consulting services as reasonably required in its judgment to assist QFI . . . ."); *id.* at 1, ¶ 2 ("QFI agrees to pay Dorocon for such services"); *id.* at 2, ¶ 3 ("QFI shall pay to Dorocon a monthly automobile, travel and expense allowance").  The Consulting Agreement makes no mention of a requirement that Queen's Fare *demand* services in writing before Dorocon's "good faith" obligation to provide consulting services commences.  As such, Dorocon's myopic focus on a "lack of documents" misses the larger issue at stake.  Second, under District of Columbia case law, the duty of good faith and fair dealing specifically includes "evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, [or] abuse of a power to specify terms . . . ."  *Allworth v. Howard Univ.*, Civ. No. 05-0024, 2006 WL 59504, at *6 (D.C. Jan. 12, 2006) (quoting Restatement (Second) of Contracts § 205 cmt. d).  Absent from the legal parameters of "good faith and fair dealing" is a requirement that one party demand performance by the other to instigate the running of the good faith obligation.  Accordingly, Defendants were not required to introduce communications documenting their performance demands to Dorocon in order to sustain their

11

affirmative defense and prove their "good faith" counterclaim, and Plaintiff's contrary assertion is unsupported by the evidence, the Consulting Agreement itself, and the applicable law.  As such, the "lack of documents" argument is insufficient to support a motion for a new trial.

Plaintiff's second argument – that Plaintiff produced no evidence showing a "material" breach – is also without merit.  In this argument, Plaintiff's reliance on this Court's September 27, 2004 Memorandum Opinion is misplaced.  While Dorocon now argues that the "central purpose" of the Consulting Agreement, as reflected in the Court's previous Opinion, was to compensate Dorocon for bringing the business opportunity to Ms. Burke, the Court specifically left the issue in the air. Indeed, the Court held that "the jury [will] determine whether Plaintiff has breach the implied duty of good faith and fair dealing by . . . exercising its discretion in any arbitrary or unreasonable manner."  *See Dorocon v. Burke*, Civ. No. 02-2556(CKK), at 57 (D.D.C. Sept. 27, 2004).  While the Court recognized that one major purpose of the Consulting Agreement was to compensate Dorocon for its pre-Agreement performance, the Court also recognized that Dorocon's post-Agreement performance – or lack thereof – could significantly impact Dorocon's liability and the award of damages in this case.[1]

The trial in this case essentially came down to a series of credibility determinations – namely, did the jurors credit Queen's Fare's/Regina Burke's expectations and memories, or did they

---

[1] The Court notes that, via a stipulation signed on January 26, 2006, both parties agreed not to parse out damages into pre-contract services and post-contract services. *See* 1/26/06 Stipulation Between the Parties (Docket Entry #77).  In effect, the stipulation made the damages in this case all-or-nothing, and the jury was absolved of the responsibility of determining if damages to Defendants Queen's Fare and Ms. Burke should be reduced by some percentage given Dorcon's pre-Consulting Agreement Services.  By finding for Defendants, the jury – in effect – determined that Dorocon's breach of the implied duty of good faith and fair dealing was material and, through the stipulation, automatically awarded Defendants $665,000 and absolved them of any responsibility for the $770,250 owed under the Consulting Agreement.

credit the expectations of Ron and Dorothy Reeves of Dorocon?  At trial, Ms. Burke testified that

she expected Dorocon to provide Queen's Fare with consulting services as how to better manage

Queen's Fare's relationship with Host Marriott.[2]  Defendants presented evidence of Queen's Fare's

excessive problems with Host, and evidence that Dorocon was aware of these problems.  Defendants

also presented evidence, through Dorothy Reeves of Dorocon herself, that Dorocon's only

"consulting advice" was to suggest that Queen's Fare write a letter to Host, write a letter to Dunkin

Donuts, and speak with Tom Mann – an individual not associated with Dorocon or Host.  Finally,

Defendants presented evidence that once Ms. Burke made Ron Reeves aware of Queen's Fare's

operational difficulties, he reacted with indifference and failed to offer consulting help of any kind.

In contrast, Dorothy and Ron Reeves presented differing testimony as to what their "reasonable

expectations" under the Consulting Agreement were, and what services were provided.  With little

direct documentation supporting either side, jurors in this case were left to make their own

individual assessments and credibility determinations of the relevant witnesses.  In less than two (2)

hours, the jurors unanimously found in favor of Defendants, finding their evidence and testimony

most persuasive.  Upon a review of the evidence and testimony presented at trial, the Court cannot

say that this finding was against the clear "weight of the evidence" or a "miscarriage of justice."

*See Machesney v. Bruni*, 905 F. Supp. 1122, 1130 (D.D.C. 1995) ("The trial court, however, is not

supposed to supplant the jury's view with that of its own and order a new trial simply because the

court would have weighed the evidence differently from the jury.").  "Mindful of the jury's special

function in our legal system," *Lewis*, 628 F. Supp. at 516, the Court finds that Dorocon's

disagreement with the jury's conclusions is not a valid ground for a new trial in this action.  Given

---

[2] During testimony, both sides – both Dorocon and Defendants – presented testimony
regarding the events leading up to the Consulting Agreement and how the contract developed.

13

the evidence put forth by Defendants and the importance of credibility determinations in this matter,

Dorocon has simply not met its burden of proof to show a "miscarriage of justice."

## IV: CONCLUSION

For the reasons set forth above, Plaintiff's Motion for a New Trial is denied.  An Order

accompanies this Memorandum Opinion.


Date:   February 27, 2006


                                        _____/s/_____
                                        COLLEEN KOLLAR-KOTELLY
                                        United States District Judge